# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **ALTER TRADING CORPORATION,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**DERRICK BRION,** )<br>)<br>*To Be Served Via Special Process Server* )<br>Serve at: 1923 Lafayette Street #2 )<br>Janesville, Wisconsin 53546 )<br>)<br>**Defendant.** ) | Case No. _____ |

## PLAINTIFF'S VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND DAMAGES

COMES NOW Plaintiff Alter Trading Corporation ("Alter"), by and through counsel, and for its Verified Complaint for Injunctive and Other Relief and Damages against Defendant Derrick Brion ("Brion"), submits as follows:

## INTRODUCTION

This Verified Complaint for Injunctive and Other Relief and Damages ("Complaint") arises out of Brion's disregard for Missouri law and the terms of the CONFIDENTIALITY, NONCOMPETITION, AND NONSOLICITATION AGREEMENT ("Agreement") that he entered into with Alter. A copy of the Agreement is attached to this Complaint as **Exhibit 1**.

## PARTIES

1. Alter is an Iowa corporation with its principal place of business located at 700 Office Parkway, St. Louis, Missouri 63141.

2. Brion is an individual citizen of the State of Wisconsin residing at 1923 Lafayette Street #2, Janesville, Wisconsin 53546.

## JURISDICTION AND VENUE

3. Pursuant to the Agreement, jurisdiction and venue are proper in this Court. (Agreement, ¶ 13).

4. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. § 1331; 28 U.S.C. § 1332, because the parties are citizens of different states, and the amount in controversy exceeds $75,000; and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a), (b) and (c).

## ALLEGATIONS COMMON TO ALL COUNTS

**I.     Introduction.**

6. Alter is primarily engaged in the business of selling, purchasing and processing scrap metal and automobile parts.

7. Alter has various scrap yards across the country, including one located at 1753 Beloit Avenue, Janesville, Wisconsin 53546 (the "Facility").

8. At all relevant times, Alter took precautionary measures to secure and protect its Confidential Information (as defined below), customer contacts, goodwill and employment relationships, including through the use of Confidentiality, Noncompetition and Nonsolicitation Agreements, as a condition of employment.

9. Alter hired Brion on or about May 14, 2012 to work as an Account Executive.

10. In this role, Brion had substantial contact with Alter's customers. Brion also had significant exposure to Alter's Confidential Information (as defined below), including amongst

other things, customer lists, customer financial information, Alter's financial information, Alter's billing and accounting processes, and Alter's scrap processing techniques.

      11.      As a condition of Alter hiring Brion, Brion executed the Agreement.

**II.**      **The Agreement.**

      12.      In his Agreement, Brion acknowledged, among other things:

> WHEREAS, Company has through its research, creativity, and experience, developed and acquired valuable Confidential Information; and
>
> WHEREAS, as a result of Employee's position with Company, Employee contributes to, receives, or possesses such Confidential Information; and
>
> WHEREAS, Company will suffer irreparable harm if Employee makes any unauthorized disclosure or communication thereof to any third party or makes any use of such Confidential Information wrongfully or in competition with Company…

(Agreement, Third, Fourth and Fifth Recitals).

      13.      Brion also acknowledged and agreed, "Employee will have contact with Company's customers and may develop relationships with them that could be used against the interests of Company but for the limitations set forth herein."  (Agreement, Sixth Recital).

      14.      The "Confidential Information" provision of the Agreement provides, in relevant part:

> **Nondisclosure**.  Employee shall, during the course of Employee's employment and at all times subsequent to Employee's employment, hold in strictest and total confidence all Confidential Information.  Employee will at no time, without prior written authorization by Company, disclose, assign, transfer, convey, communicate, or use for the benefit of any person or entity other than Company any Confidential Information, nor shall Employee permit any other person or entity to use Confidential Information in competition with Company.

(Agreement, ¶ 1 (a)).

3

>**Definitions.** As used herein, the term **"Confidential Information"** shall mean any information proprietary to Company and not generally known, including without limitation Trade Secrets; Inventions; technology, whether now known or hereafter discovered; information pertaining to research, development, techniques, engineering, purchasing, marketing, selling, accounting, licensing, know how, processes, products, equipment, devices, models, prototypes, computer hardware, computer programs and flow charts, program code, software libraries, databases, formulae, compositions, discoveries, cost systems, and pending business transactions; the identity of customers and potential customers and the particular needs and requirements of customers; customer lists; customer histories and records; personnel information; financial information; and confidential and proprietary information of customers and other third parties received by Company.
>
>As used herein, the term **"Trade Secret"** shall mean information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
>
>…

(Agreement, ¶ 1 (b)).[1]

15. Brion was also required to return the Confidential Information to Alter:

    >**Return of Confidential Information.** Upon termination of Employee's employment with Company or at any other time upon Company's request, Employee shall deliver promptly to Company all originals and all copies (including photocopies, facsimiles, and computer or other means of electronic storage whether now known or hereafter discovered) of all documents and other materials relating in any way to Confidential Information or the business of Company. Employee will not make or retain any copies of the foregoing and will so represent to Company upon Employee's termination of employment.

---

[1] The term "Confidential Information" used herein shall be construed to include Trade Secrets, as defined in the Agreement.

(Agreement, ¶ 1(c)).

16. The noncompetition provision in the Agreement provides:

> **Noncompetition**.  During Employee's employment and for a period of two (2) years after the termination of Employee's employment for any reason, Employee shall not, within 200 miles of any location where Employee worked for or provided services for Company, directly or indirectly, own, manage, operate, control, advise, be employed by, or materially participate in, or be materially involved in any manner with the ownership, management, operation, or control of any business or entity that competes with the business then conducted by Company or any of its affiliated companies or subsidiaries.

(Agreement, ¶ 2(a)).

17. The customer nonsolicitation provision provides:

> **Non-Solicitation of Customers**.  During Employee's employment, and for a period of two (2) years after the termination of Employee's employment for any reason, Employee shall not, individually or collectively, as a participant in a partnership, sole proprietorship, corporation, limited liability company, or other entity, or as an operator, investor, shareholder, partner, director, employee, consultant, manager, sales representative, independent contractor or advisor of any such entity, or in any other capacity whatsoever, either directly or indirectly:
>
>> **i.** solicit or accept any business from any Customer [as defined therein] or assist any other entity in soliciting or accepting any business from any Customer [as defined therein]; or
>>
>> **ii.** request or advise any Customer [as defined therein] to withdraw, curtail, or cancel any of such Customer's [as defined therein] business or other relationships with Company.

(Agreement, ¶ 2(b)).

18. Employee acknowledged and agreed that the foregoing restrictive covenants were reasonable and necessary to protect Alter's legitimate business interests:

>**Reasonableness of Restrictions.** Employee acknowledges that Employee's covenant not to compete unfairly is necessary to protect the legitimate business interests of Company, and that irreparable harm and damage will be done to Company in the event that Employee competes unfairly with Company. Employee further acknowledges that it would cause substantial harm and detriment to Company, including loss of office continuity and return on investment made in training employees, additional training and hiring costs for replacement employees, potential loss of referral sources and customers, and potential loss of Confidential Information, if employees of Company were hired or lured by Employee to a business similar to that of Company.

(Agreement, ¶2 (d)).

19. Brion executed the Agreement freely and under no coercion or duress.

## III.   Brion's Position as Account Executive.

20. As an Account Executive, Brion was responsible for, amongst other duties, developing customers and customer accounts, and purchasing scrap metal from Alter's customers, customer accounts and referral sources.

21. Brion also had substantial contact with customers and Confidential Information at the other yards in southern Wisconsin, northern Illinois and northern Iowa.

22. Throughout his employment as Account Executive, Brion developed relationships and goodwill with Alter's customers. Many of these customers traveled as far as 200 miles to purchase scrap metal from, sell scrap metal to, and have scrap metal processed by Alter at the Facility and throughout the southern Wisconsin, northern Illinois and northern Iowa regions.

23. As Account Executive, Brion contributed to and received Alter's Confidential Information, including but not limited to, scrap processing techniques; purchasing, marketing and selling practices; know how; computer programs; the identity of customers and potential customers and the particular needs and requirements of customers; customer lists; customer

6

histories and records; personnel information; financial information; and confidential and proprietary information of customers and other third parties received by Alter.

## IV. Termination of Brion's Employment.

24. On or about June 10, 2016, Brion informed Alter he would be voluntarily terminating his employment.

## V. Brion's Violation of the Agreement.

25. In or around July 2016, Alter learned Brion had become employed by CIMCO Resources, Inc. ("CIMCO").

26. CIMCO is also in the business of selling, purchasing and processing scrap metal. CIMCO operates in direct competition with Alter.

27. On August 1, 2016, Alter, through counsel, sent Brion a letter, instructing him to cease and desist from violating the Agreement, and to comply with the terms therein.  A copy of Alter's letter is attached hereto as **Exhibit 2**.  Brion never responded to Alter's letter.

28. Nevertheless, Brion continued to violate his Agreement.  Specifically, Alter learned Brion has been actively competing with Alter in and around Janesville, Wisconsin, Cedar Rapids, Iowa and other locations yet to be confirmed.  These locations are within the restricted area.

29. Additionally, to date, Brion remains employed by CIMCO.

30. On behalf of CIMCO, Brion has been aggressively soliciting Alter's customers, and has in fact purchased scrap metal from and sold scrap metal to Alter's customers.

31. On information and belief, Brion has retained Alter's Confidential Information and used Alter's Confidential Information to further his competition with Alter and solicitation

7

of Alter's customers.  Brion has also failed to return Confidential Information to Alter, in violation of the Agreement.

32. As a result of Brion's actions, Alter stands to suffer, and will continue to suffer, immediate and irreparable harm for which there is no adequate remedy at law.  Alter's loss is presently impossible to quantify.  Alter is threatened with the erosion and loss of customer relationships, interference with customers, loss of potential customers, loss of goodwill, loss of profits, and loss of confidential and proprietary information.

## COUNT I
## INJUNCTIVE AND EQUITABLE RELIEF

33. Alter re-alleges and incorporates fully by reference herein paragraphs 1 through 32 of this Complaint.

34. In the Agreement, Brion acknowledged that the restrictions contained in his Agreement are reasonable and necessary to protect Alter's legitimate business interests, that any violation of the Agreement would result in irreparable harm to Alter, and that Alter's need for the protection afforded by the Agreement is greater than any hardship Brion might experience.  (Agreement, ¶ 2(d)).  Brion also acknowledged that, in the event he should violate the terms of his Agreement, Alter would be entitled to an injunction, specific performance and other equitable relief.  (Agreement, ¶ 4).

35. As described more fully in paragraphs 25 through 32, above, Brion, on information and belief, has engaged and continues to engage in conduct that violates the terms of his Agreement with Alter.

36. Alter has suffered and will continue to suffer immediate and irreparable harm without any adequate remedy at law, if Brion is not enjoined from engaging in conduct prohibited by his Agreement.  As a result of Brion's impermissible conduct, Alter has lost

business opportunities and customers and may lose further business opportunities and customers that will impair the continued viability of Alter's operations at the Facility.

37. As Brion specifically acknowledged in his Agreement, Alter's need for the protection afforded by the Agreement, including injunctive relief, is greater than any hardship Brion might experience by enforcing the Agreement. (Agreement, ¶ 2(d)). Rather, enforcing the Agreement and enjoining any further breach by Brion will simply not prevent him from pursuing other employment. The irreparable harm to Alter if an injunction is not imposed, therefore, exceeds any harm or injury that may occur to Brion if an injunction is granted.

38. The public interest will not be harmed by the enforcement of the Agreement. The public is benefited when lawful agreements are enforced.

WHEREFORE, Alter respectfully requests the Court grant a temporary restraining order, preliminary and permanent injunctive relief enjoining Brion from violating his Agreement, order an accounting of all profits, compensation, commissions, remuneration or benefits which Brion has realized and/or may realize in the future as a result of any violation of the Agreement, and for such other and further relief as the Court deems just and proper.

## COUNT II
## MISSOURI UNIFORM TRADE SECRETS ACT

39. Alter re-alleges and incorporates by reference herein paragraphs 1 through 38 of this Complaint as if set forth herein.

40. At all times relevant, Alter has maintained their Confidential Information (including Trade Secrets) described hereinabove within the meaning of § 417.450 RSMo *et seq.* ("Missouri Uniform Trade Secrets Act" or "MUTSA").

41. While in the employ of Alter, Brion had access to Alter's Confidential Information (including Trade Secrets) and understood the proprietary nature of said information.

9

42. Prior to his resignation, Brion took and retained for the benefit of himself and CIMCO, Alter's Confidential Information (including Trade Secrets) with the knowledge that the information constitutes Alter's Trade Secrets and Confidential Information.

43. Brion acquired Alter's Confidential Information (including Trade Secrets) under circumstances giving rise to a duty to maintain its secrecy or limit its use, as he was an Account Executive of Alter, had a duty to protect against the misappropriation of this information, and protect against the improper acquisition and retention of this information.

44. Brion failed to maintain his duty to maintain the secrecy of Alter's Trade Secrets and Confidential Information, and upon information and belief, has utilized the same for the benefit of himself and CIMCO.  Therefore, Brion has misappropriated Alter's Trade Secrets and Confidential Information in violation of his duties under the common law and MUTSA.

45. In utilizing and/or disclosing Alter's aforementioned Trade Secrets and Confidential Information, Brion has misappropriated such information to compete unfairly with and to harm Alter through his new employer, CIMCO.

46. As a direct and proximate result of Brion's breaches, and his misappropriation, disclosure and use of Alter's Trade Secrets and Confidential Information, Alter has been damaged and will continue to be damaged in an amount exceeding $75,000.00.

47. Brion's wrongful conduct as described herein will cause Alter irreparable injury unless Brion is preliminarily and permanently enjoined by this Court from retaining and utilizing for his benefit Alter's Trade Secrets and Confidential Information and unfairly competing with Alter.

48. Alter lacks an adequate remedy at law that would sufficiently protect its rights on a going forward basis in the absence of preliminary and permanent injunctive relief.

CORE/3001850.0002/128533930.7

49. Brion's conduct, including but not limited to, his misappropriation of Alter's Trade Secrets and Confidential Information, is outrageous because of Brion's intentional disregard or reckless indifference to Alter's rights. Therefore, this Court should grant Alter punitive damages against Defendant.

WHEREFORE, Alter respectfully requests the Court enter judgment in its favor against Brion has follows:

(a) For actual damages in an amount to exceed $75,000.00 to compensate Alter for losses suffered due to Brion's violations of the Missouri Uniform Trade Secrets Act;

(b) For punitive damages;

(c) For a preliminary injunction restraining and enjoining Brion from engaging in all activities prohibited by the Missouri Uniform Trade Secrets Act, and from using, retaining or disclosing any Trade Secrets or Confidential Information which Brion obtained during his employment with Alter pending the entry of a permanent injunction, and requiring that Brion return to Alter all of Alter's property which Brion retained after his resignation;

(d) For a permanent injunction enjoining Brion from engaging in all activities prohibited by the Missouri Uniform Trade Secrets Act, and from using, retaining or disclosing any Trade Secrets and Confidential Information which Brion obtained during his employment with Alter, and ordering that Brion return to Alter all of Alter's property which Brion retained after his resignation;

(e) For Alter's costs and attorneys' fees in pursuing this action; and

(f) For such other and further relief as the Court deems just and proper.

CORE/3001850.0002/128533930.7

## COUNT III
## **BREACH OF CONTRACT**

50.     Alter re-alleges and incorporates by reference herein paragraphs 1 through 32 of this Complaint as if set forth herein.

51.     As set forth above, Brion entered into the Agreement with Alter.  (Exhibit 1).

52.     Alter has fulfilled all of its obligations and conditions precedent to enforcement of the Agreement.

53.     As described more fully in paragraphs 14 through 35 above, Brion has breached his Agreement by working for CIMCO in competition with Alter within a 200-mile radius of the last location where he provided services on behalf of Alter, within the 2-year period, by soliciting directly or indirectly Alter's customers, and by utilizing Alter's Confidential Information.

54.     Alter has suffered and will continue to suffer damages as a result of Brion's breach of his Agreement, including but not limited to lost profits from lost revenues of Alter customers diverted to CIMCO by Brion.  The amount of damages suffered by Alter as a result of Brion's breach of his Agreement cannot yet be precisely quantified.

55.     In his Agreement with Alter, Brion agreed that, if he should breach his Agreement, Alter would be entitled to recover all equitable and/or legal remedies to which Alter is entitled as a result of Brion's breach.  (Agreement, ¶ 4).  In addition, Brion agreed to pay attorneys' fees and costs incurred by Alter to enforce the terms of his Agreement, including actual attorneys' fees.  (Agreement, ¶ 14).

WHEREFORE, Alter respectfully requests the Court enter judgment against Brion for damages in an amount to be determined at trial, as well as interest, court costs, attorneys' fees and such other and further relief as the Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

56. Alter re-alleges and incorporates by reference herein paragraphs 1 through 32 of this Complaint as if set forth herein.

57. Brion has been enriched by wrongfully using Alter's Confidential Information; performing work for customers of Alter; working for a business competitive with Alter; improperly soliciting Alter's customers; and taking away business from Alter.

58. Brion's unjust enrichment as set forth in paragraph 57 hereof has been, and continues to be, at the expense of Alter and is causing Alter damage.

59. It would be unjust for Brion for not to be required to pay Alter damages for his past and continued wrongful use of Alter's Confidential Information, performance of work for customers of Alter, work for a business competitive with Alter, improper solicitation of Alter's customers, and taking away business from Alter.  The damages incurred by Alter as a result of Brion's wrongful conduct cannot yet be determined with specificity.

WHEREFORE, Alter respectfully requests the Court enter judgment against Brion for an accounting and damages in an amount to be determined at trial for all profits, compensation, commissions, remuneration and benefits which Brion has realized and/or may realize in the future as a result of any violation of his Agreement, as well as interest, court costs, attorneys' fees, and for such other relief as the Court deems just and proper.

## COUNT V
## VIOLATION OF MISSOURI COMMON LAW - BREACH OF DUTY OF LOYALTY

60. Alter re-alleges and incorporates by reference herein paragraphs 1 through 32 and 50 through 55 of this Complaint as if set forth herein.

13

61. The aforementioned Confidential Information was acquired by Brion while he was still Account Executive for Alter, but Brion acquired said information without the intent to use it for the benefit of Alter and with the intent to use it to compete with Alter and to the detriment of Alter.

62. While in the employ of Alter, Brion had access to Alter's Confidential Information and understood the confidential and proprietary nature of the information. Based upon the nature and tenure of his employment relationship with Alter, as described above, Brion owed Alter duties of loyalty, honesty, and good faith and fair dealing.

63. Brion has misappropriated and utilized Alter's Confidential Information for his benefit, without Alter's consent, with the knowledge that the information constituted trade secrets, and with the knowledge that Brion acquired such information under circumstances giving rise to a duty to maintain its secrecy or limit its use. In so acting, Brion has violated his common law duty to maintain the secrecy of Alter's Confidential Information, as well as his common law duties of loyalty, honesty, and good faith and fair dealing.

64. Brion has misappropriated, utilized and disclosed Alter's Confidential Information to compete unfairly with and to harm Alter through CIMCO.

65. Brion solicited customers, contractors and referral sources on behalf of himself and CIMCO while an employee of Alter.

66. Upon information and belief, Brion began competing with Alter while employed by Alter.

67. As a direct and proximate result of Brion's breaches of his duties to Alter, Brion has damaged Alter in an amount exceeding $75,000.00, will continue to damage Alter, and will cause Alter irreparable injury unless enjoined by this Court.

CORE/3001850.0002/128533930.7

68. Alter has no adequate remedy at law for Brion's ongoing breaches.

69. Brion's conduct is (and was) outrageous, malicious, intentional, and done with reckless disregard for the rights of Alter, thereby entitling Alter to an award of punitive damages.

WHEREFORE Alter respectfully requests the Court enter judgment in its favor against Brion as follows:

(a) For actual damages in an amount to exceed $75,000.00 to compensate Alter for losses suffered due to Brion's actions;

(b) For punitive damages;

(c) For a preliminary injunction restraining and enjoining Brion from engaging in all activities prohibited by Missouri law and from using, retaining or disclosing any Confidential Information which he obtained during his employment with Alter, pending the entry of a permanent injunction, and requiring that Brion return to Alter all of Alter's property which Brion retained after his resignation;

(d) For a permanent injunction enjoining Brion from engaging in all activities prohibited by Missouri law, and from using, retaining or disclosing any Confidential Information which he obtained during his employment with Alter, and ordering that Brion return to Alter all of Alter's property which Brion retained after his resignation;

(e) For Alter's costs and attorneys' fees in pursuing this action; and

(f) For such other and further relief as the Court deems just and proper.

## COUNT VI
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

70. Alter re-alleges and incorporates by reference herein paragraphs 1 through 32 and 50 through 55 of this Complaint as if set forth herein.

15

71. Alter is a party to written and oral contracts with a variety of customers. Pursuant to these contracts, Alter purchases scrap metal from, sells scrap metal to, and processes scrap metal for these customers.

72. In addition, Alter has expectancies for repeat business of such contracts.

73. Brion had knowledge of and worked on Alter's contracts and the contract renewals/repeat business.

74. Since Brion's resignation from Alter, Brion has solicited the business of entities with whom Alter has current contracts, and, upon information and belief, other customers of Alter.

75. Brion has solicited Alter's customers to breach or decline to renew their contractual relationships with Alter in favor of new relationships with his new employer, CIMCO.

76. As a result of Brion's actions as described herein, Alter has been forced to increase prices it pays to customers for scrap metal sold, and spent countless hours of numerous employees in order to retain, or attempt to retain, their contractual relationship with these customers.

77. Brion has interfered with Alter's contractual relationships and business expectancies without any legal justification.

78. Brion has utilized improper means to interfere with Alter's contractual relationships and business expectancies by using Alter's Confidential Information to assist him in his attempts to obtain the business of Alter's customers.

79. Brion's intentional interference with Alter's contractual relationships and business expectancies has caused Alter to suffer damages in an amount exceeding $75,000.00 in the form

16

of lost profits under its contracts with the above-described customers, and others to be determined.

80. Brion's actions as described herein are outrageous because of their intentional disregard and/or reckless indifference to Alter's rights, thereby entitling Alter to punitive damages.

WHEREFORE Alter respectfully requests the Court enter judgment in its favor and against Defendant, as follows:

(a) For actual damages in an amount to exceed $75,000.00;

(b) For punitive damages;

(c) For attorneys' fees and costs incurred herein;

(d) For a preliminary and permanent injunction restraining and enjoining Brion from interfering with Alter's contractual relationships and business expectancies; and

(e) For such other and further relief as the Court deems just and proper.

## COUNT VII
## MISSOURI COMMON LAW – UNFAIR COMPETITION

81. Alter re-alleges and incorporates by reference herein paragraphs 1 through 32, 50 through 55 and 60 through 80 of this Complaint as if set forth herein.

82. As described hereinabove, while in the employ of Alter, Brion had access to Alter's Confidential Information and understood the confidential and proprietary nature of the information.

83. Brion has utilized for his benefit and the benefit of CIMCO, without the consent of Alter, and/or communicated Alter's Confidential Information without Alter's consent. Brion undertook such action despite the knowledge that Brion had maintained a position of trust and

17

confidence and owed duties of loyalty, honesty and good faith to Alter while in Alter's employ and thereafter with respect to Alter's Confidential Information.

84. While in the possession of the aforementioned improperly obtained Confidential Information, Brion has used said information to solicit, submit bids and proposals to customers of Alter and frustrate Alter's abilities to operate its business.

85. Brion has utilized Alter's Confidential Information to injure Alter in an amount exceeding $75,000.00, to be proven at trial.

WHEREFORE Alter respectfully requests the Court enter judgment in its favor and against Brion as follows:

(a) For actual damages in an amount to exceed $75,000.00 to compensate Alter for losses suffered due to Brion's actions;

(b) For punitive damages;

(c) For a preliminary injunction restraining and enjoining Brion from engaging in all activities prohibited by Missouri law and from using, retaining or disclosing any Confidential Information which Brion obtained during his employment with Alter, pending the entry of a permanent injunction, and requiring Brion to return all of Alter's property which Brion retained after his resignation;

(d) For a permanent injunction enjoining Brion from engaging in all activities prohibited by Missouri law, and from using, retaining or disclosing any Confidential Information which Brion obtained during his employment with Alter, and ordering that Brion return to Alter all of Alter's property which Brion retained after his resignation;

(e) For Alter's costs and attorneys' fees in pursuing this action; and

(f) For such other and further relief as the Court deems just and proper.

Respectfully submitted,

STINSON LEONARD STREET LLP


 /s/Marc D. Goldstein
Mark G. Jacobs, #60416MO
Marc D. Goldstein, #62910MO
7700 Forsyth Blvd, Suite 1100
St. Louis, Missouri 63105
(314) 863-0800 telephone
(314) 863-9388 facsimile
mark.jacobs@stinson.com
marc.goldstein@stinson.com

*Counsel for Plaintiff Alter Trading Corporation*

## VERIFICATION

Jim Logerquist of Alter Trading Corporation, being of lawful age and after being duly sworn, states that he has read the foregoing Verified Complaint and that the facts therein are true and correct according to his best memory, knowledge, information and belief.

_____
Jim Logerquist

Subscribed and sworn to before me this 29th day of August 2016.

_____
Notary Public

My commission expires:

> REBECCA S. LINDBLOM
> Notary Public - Notary Seal
> STATE OF MISSOURI
> St. Charles County
> My Commission Expires: April 14, 2017
> Commission # 13480369

20